IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DUKHAN MUMIN,

                    Petitioner,

          vs.

SCOTT FRAKES,

                    Respondent.

**4:16CV3033**

**MEMORANDUM
AND ORDER**[*]

This matter is before the court on Petitioner Dukhan Mumin's ("Mumin") Petition for Writ of Habeas Corpus (Filing No. 1) and Supplemental Writ of Habeas Corpus (Filing No. 14). For the reasons that follow, the court will dismiss Mumin's initial and supplemental habeas petitions with prejudice.

Liberally construed, Mumin argues in his initial and supplemental habeas petitions that he is entitled to a writ of habeas corpus based on the following claims:

Claim One:          His right to confrontation was violated because (1) he was prevented from questioning a lab analyst whose report was admitted into evidence at trial; (2) the trial court allowed the testimony of a confidential informant; (3) the trial court admitted hearsay evidence; and (4) the trial court prevented him from questioning "Mrs Harris."

---

[*] This opinion contains hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Claim Two:     He was denied effective assistance of trial counsel because his attorney (1) did not file a motion to dismiss or motion for new trial based on insufficiency of evidence, the prosecutor's failure to produce the lab analyst to testify, the prosecutor's failure to notify defense counsel that the lab analyst's report would be offered at trial, and the prosecutor's failure to demonstrate that non-testifying witnesses were unavailable for trial; (2) did not discover the identity of the confidential informant; (3) failed to object to the habitual criminal enhancement; (4) failed to object based on hearsay and the violation of his right to confront witnesses; (5) failed to move to exclude police officer testimony regarding statements made by non-testifying witnesses; and (6) failed to move to exclude the lab analyst's report.

Claim Three:   He was denied effective assistance of appellate counsel because counsel (1) failed to raise the issue of vindictive prosecution, and (2) failed to raise all arguments regarding trial counsel's deficient performance as set forth in Claim Two herein.

Claim Four:    He was denied the right to a fair trial and an impartial judge.

Claim Five:    He was subjected to an illegal search and seizure by police.

Claim Six:     He was vindictively prosecuted.

Claim Seven:   His sentence is void and unconstitutional because the State failed to show that he had counsel or waived counsel for each of his prior convictions.

(*See* filing No. 1; filing No. 14.)

## I.  BACKGROUND

**A.     Conviction and Sentence**

The court states the facts as they were recited by the Nebraska Court of Appeals in *State v. Mumin*, Case No. A-13-783 (Memorandum Opinion) (affirming Mumin's convictions and sentences on direct appeal); (Filing No. 28-4.). *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006).

On August 19, 2011, the State filed an information charging Mumin with possession of a controlled substance with the intent to deliver, and a habitual criminal enhancement. Neb. Rev. Stat. §§ 28-416 (1) (A) and 29-2221 (Reissue 2008). The information alleged that Mumin was previously convicted of two felonies. The information was later amended to possession of a controlled substance with a habitual criminal enhancement. § 28-416(3).

On June 22, 2012, Mumin filed a motion to suppress evidence seized from his person, his living quarters, his motor vehicle, or any other place as a result of the search that occurred on June 16, 2011. A second motion was filed by Mumin to include the suppression of any visual or auditory observations made by Lincoln police officers.

At the suppression hearings, Jason Mayo, an investigator with the Lincoln/Lancaster County Narcotics Task Force, a division of the Lancaster County sheriff's department, testified that his duties are to investigate the purchase, sale, and distribution of controlled substances. On June 16, 2011, Mayo was on duty as a plainclothes investigator in an unmarked cruiser with investigator Timothy Cronin, also with the Lincoln police department. Mayo observed a 1994

tan Lexus with Iowa plates in an area of Lincoln, Lancaster County, Nebraska which Mayo explained was a known active area for narcotics dealings and crack cocaine seizures. In the 4 to 5 weeks prior to June 16, Mayo had become familiar with the tan Lexus which he observed had frequently visited the area. Mayo testified that the Luxury Inn was a very active establishment for the sale of any type of drugs at that time and that he frequently conducted surveillance at that location, where he also observed the tan Lexus. Mayo also received information from a confidential informant throughout that time that the owner of the tan Lexus, a black male referred to as "Unc," was staying at the Luxury Inn and selling crack cocaine from that establishment.

Mayo testified that he ran the Lexus' license plates which returned information that the vehicle was registered to Mumin. During those several weeks of observation of the area, on several occasions, Mayo observed the tan Lexus in the area pull over to the side of the road, pick up a female and drive around the block. Mayo fo1lowed the vehicle around the block, at which point the Lexus stopped and let the female out of the car. Mayo testified that he believed a narcotics exchange had occurred, although he did not directly observe any item in the female's hand upon her exit of the vehicle or any actual exchange of narcotics. Mayo testified that in the weeks prior to June 16, he observed several similar events involving Mumin and his Lexus in areas known for high drug activities.

On June 16, 2011, Mayo and Cronin followed Mumin's Lexus to a parking lot in a commercial business area that Mayo described as "random" for narcotics activities. Mayo testified that no other vehicles were parked in the parking lot, that it was still light outside, and he could clearly observe that Mumin was driving the Lexus. Approximately 30 seconds after Mumin's arrival in the parking lot, a minivan driven by an black female pulled into the empty parking lot next to Mumin's Lexus. Mumin immediately got out of his Lexus and approached the minivan on the passenger side. Mumin entered the minivan, at which time Mayo

4

believed that the individuals were involved in a narcotics exchange. Mayo drove his vehicle, the unmarked police vehicle, directly behind the minivan and approached the vehicle. As he approached, Mayo observed Mumin immediately clench his hand and put it behind his back. Mayo then observed Mumin open his hands and drop a small and shiny object from his hands as Mumin exited the vehicle with Mayo. Mayo testified that it was common for individuals in similar situations to try and get rid of the drugs by doing such things as throwing drugs between the seats, putting drugs down their pants, or swallowing them. As Mumin reached behind his back, Mayo testified that he was concerned that Mumin was reaching for a weapon or attempting to destroy drugs. However, on cross-examination, Mayo testified that in his experience as an investigator, he had not previously seen crack cocaine packaged in tinfoil. Mayo observed a piece of shiny tinfoil on the front passenger seat and, after opening the tinfoil, found what appeared to be a small rock of crack cocaine, which Mayo testified was substantiated by testing at the Nebraska State Patrol Crime Lab.

The female driver of the vehicle reported to Mayo that she was at that location in order to purchase $20 of crack cocaine from "Unc" who was seated in the vehicle with her when Mayo approached. The driver indicated that she had purchased crack cocaine from Mumin on several occasions in the weeks prior to June 16, 2011. Thereafter, a marked cruiser arrived and Mayo and Cronin conducted a probable cause search of Mumin's Lexus. Mayo testified that based upon his education, training, and experience, including information and investigations conducted beforehand regarding Mumin's involvement in a narcotics sa1e, that there were narcotics in the Lexus. In the Lexus, Mayo found more tinfoil containing 18 individually wrapped pieces of crack cocaine. Additionally, Mayo testified that he also found cash and several cell phones in Mumin's vehicle.

On cross-examination, Mayo admitted that in the surveillance conducted prior to June 16, 2011, he had not actually observed Mumin at the Luxury Inn or in the Lexus. Similarly, Mayo testified that he had not directly observed anything that occurred in Mumin's vehicle on the occasions that people were observed getting into the vehicle with him and driving around the b1ock. Mayo testified that on June 16, he did not see Mumin commit any traffic violation on the way to the parking lot, but once Mumin exited his vehicle and entered the passenger side of the minivan, Mayo believed that a narcotics transaction was occurring in the minivan. Mayo testified that he did not ask or receive any consent to search either vehicle.

Cronin testified as to much of the same information as Mayo explained above, including that as Cronin approached the car, in plain clothing, but with his sidearm on his hip and badge around a lanyard on his neck, he observed Mumin move his hand and quickly shove it behind his back. Cronin testified that he was concerned for his safety as he believed that Mumin could either have had a weapon behind his back or was trying to hide or destroy narcotics. As Cronin reached for Mumin, he observed his hand relax and open from the previously clenched position and three balls of tinfoil fall on the seat where Mumin's hand had been. Cronin also testified that the female driver of the minivan reported that she had, on several occasions in the preceding 2 months, purchased crack cocaine from Mumin.

Thereafter, the district court overruled both of Mumin's motions to suppress. The district court found that Mayo and Cronin had reasonable suspicion that criminal activity was occurring, specifically, the delivery of narcotics, when the officers parked behind the minivan in the parking lot. The district court found that Mumin's behavior of reaching behind his back did not dispel the suspicion and Cronin was justified in grabbing Mumin and removing him from the minivan to protect himself or to prevent the destruction of evidence. The court further determined that the officers did not have to get a warrant before reaching into the minivan to retrieve and open the tinfoil packets, that Mumin had no right to

privacy in the minivan and had abandoned the foil packets. The district court found that even if Mumin's circumstances did not apply to the right to privacy or abandonment arguments, under the automobile exception, no warrant was required.

Thereafter, a bench trial was held on stipulated facts. Mumin objected to the submission of the testimony by Mayo and Cronin, and all related exhibits, as the exhibits related to his motions to suppress, which objections were all overruled by the district court. The facts stipulated to were the following: that three rocks of crack cocaine were found in the minivan, 18 rocks of crack cocaine were found in Mumin's vehicle, the chain of custody was maintained for those 21 items, and that the events occurred in Lancaster County, Nebraska. The district court found beyond a reasonable doubt that Mumin did knowingly or intentionally possess a controlled substance, specifically, crack cocaine, on the date alleged in the information in Lancaster County, Nebraska.

Once the presentence investigation report was completed, at an enhancement and sentencing hearing, the district court received evidence of several prior felony convictions of Mumin and determined that Mumin was a habitual criminal. The district court sentenced Mumin to 10 years' to 20 years' imprisonment.

## B.   Direct Appeal

Mumin appealed his conviction and sentence to the Nebraska Court of Appeals. (Filing No. 1.) In a brief prepared by counsel, Mumin argued that the trial court erred when it (1) overruled Mumin's motions to suppress and admitted the evidence obtained therefrom, and (2) imposed an excessive sentence. (Filing No. 28-7.) In his pro se brief, Mumin argued that the trial court erred when it (1) allowed "the police to testify concerning out-of-court statements made by witnesses, without establishing on the record as to whether [Mumin] waived his confrontation rights"; (2) found that he did not have standing to challenge the stop

7

and seizure; (3) prosecuted him in violation of due process; and (4) found facts that increased his sentence, in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013). (Filing No. 28-8.) Mumin argued, in both briefs, that his trial counsel was ineffective on multiple grounds. (Filing No. 28-7; Filing No. 28-8.)

The Nebraska Court of Appeals rejected Mumin's claims of trial court error and determined that the record was insufficient to review his claims of ineffective assistance of trial counsel. (Filing No. 28-4.) Because there was no Fourth Amendment violation, the court concluded that the trial court properly overruled Mumin's motions to suppress. (*Id.* at CM/ECF pp. 8-18.) The court also determined that Mumin's right to confrontation had not been violated and that there was nothing in the record to support his claim that the State prosecuted him in violation of due process. (*Id.* at CM/ECF pp. 18-21.) The court concluded that Mumin's sentence was not excessive and that there was no *Alleyne* violation. (*Id.* at CM/ECF pp. 21-26.) The court affirmed Mumin's conviction and sentence. (*Id.* at CM/ECF p. 28.) Thereafter, Mumin and his counsel filed petitions for further review. (Filing No. 28-11; Filing No. 28-12.) The Nebraska Supreme Court denied both petitions.  (Filing No. 28-1.)

## C.  Postconviction Action

Mumin filed a motion for postconviction relief and supplemental pleadings to his motion in the state district court. (Filing No. 28-20 at CM/ECF pp. 2-17, 23-27, 40-42.) Mumin alleged numerous claims of trial court error, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. (*Id.*) The state district court denied Mumin postconviction relief without an evidentiary hearing. (Filing No. 37-1.)

Mumin appealed the state district court order to the Nebraska Court of Appeals. (Filing No. 28-2.) The court noted that, although Mumin assigned eleven

assignment of errors, he only specifically assigned and argued that he was entitled to an evidentiary hearing: (1) for the trial court failing to be in compliance with Neb. Rev. Stat. § 27-804 (Reissue 2008); (2) because the trial court lacked personal and subject matter jurisdiction; and (3) for the trial court failing to follow the United States Supreme Court case of *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), regarding the offer of the affidavit of a lab technician. (Filing No. 28-5 at CM/ECF p. 4.) The court also noted that Mumin only specifically assigned and argued that his trial and appellate were ineffective: (1) by not objecting to the State failing to give notice that it was offering hearsay statements of several witnesses, and (2) for failing to discover the identity of the confidential informant. (*Id.*) Accordingly, the court refused to address Mumin's remaining assignments of error, as well as his argument regarding an impartial judge because it was not specifically assigned. (*Id.* at CM/ECF p. 5.) (citing *State v. Filholm*, 848 N.W.2d 571 (Neb. 2014) (an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court)).

The court found Mumin's assertion that the trial court lacked personal and subject matter jurisdiction wholly without merit because nothing in the record supported it. (*Id.* at CM/ECF p. 7.) Regarding the alleged error under § 27-804, the court disagreed and found that Mumin failed to point out exactly which testimony he took issue with, that there was no objection to any testimony, and that the case proceeded as a stipulated bench trial with no live testimony. (*Id.* at CM/ECF pp. 7-9). The court found that this alleged error was an attempt by Mumin to relitigate the confrontation issue that it determined was without merit on direct appeal. (*Id.* at CM/ECF p. 9.) Regarding the trial court's alleged failure to follow *Melendez-Diaz*, the court determined that this alleged error was another attempt by Mumin to relitigate the confrontation issue. (*Id.* at CM/ECF pp. 9-12.) The court found no merit to Mumin's ineffective assistance of appellate counsel claims because he raised the issues on direct appeal. (*Id.* at CM/ECF p. 12.) It determined that the

record affirmatively refuted his ineffective assistance of trial counsel claims. (*Id*. at CM/ECF pp. 12-15.) The court affirmed the state district court's order. (*Id*. at CM/ECF p. 15.) Mumin filed a petition for further review. (Filing No. 28-16.) The Nebraska Supreme Court denied the petition. (Filing no. 28-2.)

### D.    Habeas Corpus Action

Mumin filed his initial and supplemental habeas petitions. (Filing No. 1; Filing No. 14.) In accordance with the court's progression order, Respondent filed an answer, brief, and the relevant state court records. (Filing Nos. 28, 37, 38, 39.) Mumin filed a brief in support of his petitions. (Filing No. 41.) Respondent filed a reply brief. (Filing No. 43.) This matter is fully submitted for disposition.

## II.  STANDARDS OF REVIEW

### A.    Exhaustion Requirement

As set forth in 28 U.S.C. § 2254:

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i)    there is an absence of available State corrective process; or

(ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted).

A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454–55 (8th Cir. 2005).

Moreover, where "no state court remedy is available for the unexhausted claim - that is, if resort to the state courts would be futile - then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n.1.

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and issues a "'plain statement' that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989). However, the state court procedural decision must "rest [ ] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation marks omitted).

**B.      Standard Under 28 U.S.C. § 2254(d)**

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's

decision conflicts with [Supreme Court] precedents." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim.  The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

## III. DISCUSSION

### A.  Claim One

Mumin claims that his right to confrontation was violated because (1) he was prevented from questioning a lab analyst whose report was admitted into evidence at trial; (2) the trial court allowed the testimony of a confidential informant; (3) the trial court admitted hearsay evidence; and (4) the trial court prevented him from questioning "Mrs. Harris." In other words, Mumin claims that his right to confrontation was violated because he could not confront the lab

analyst, the confidential informant, and "Mrs. Harris." (*See* filing No. 1 at CM/ECF pp. 5, 16.)

The Nebraska Court of Appeals effectively disposed of all four subparts of Claim One in Mumin's direct appeal when it analyzed his assertion that the trial court erred when it allowed "the police to testify concerning out-of-court statements made by witnesses, without establishing on the record as to whether [Mumin] waived his confrontation rights." (*See* filing No. 28-4 at CM/ECF pp. 18-20.)[1] The court emphasized that Mumin proceeded with a stipulated bench trial, that there was no live testimony adduced, that there was nothing in the record indicating that Mumin was denied the right to present evidence, and that Mumin did not cite "to any specific instance where his right to confrontation was violated." (*Id.*)

The relevant legal framework is as follows.[2] The Sixth Amendment's Confrontation Clause confers upon the accused "[i]n all criminal prosecutions, . . .

---

[1] Liberally construed, Mumin raised all four subparts of Claim One in his direct appeal pro se petition for further review to the Nebraska Supreme Court. (*See* filing No. 28-12.)

[2] In its decision, the court cited to Nebraska case law pertaining to an accused's right to confront live witnesses during cross-examination. Here, the parties did not present live testimony. The reasoning of the court, however, suggests that it found Mumin's assigned error without merit because he proceeded with a stipulated bench trial, which would be consistent with the legal framework cited herein. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (as long as the reasoning or result of the state court decision does not contradict relevant Supreme Court precedent, AEDPA's general rule of deference applies). However, to the extent the court's use of the wrong framework "constitute[d] error under the 'contrary to' prong of § 2254(d)(1)," *see* Brian R. Means, Federal Habeas Manual, §§ 3:49-3:50 (2016); *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc), a de novo review under the proper legal framework shows that Mumin intentionally and knowingly

the right . . . to be confronted with the witnesses against him." *Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011). That right, however, like with other constitutional rights, may be waived. *See U.S. v. Carlson*, 547 F.2d 1346 (8th Cir. 1976) (citing *Brookhart v. Janis*, 384 U.S. 1, 4 (1966)). To constitute a valid waiver there must be "an intentional relinquishment or abandonment of a known right or privilege" by the accused. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). A defendant can waive his confrontation rights by, among other things, stipulating to the admission of evidence. *See Carlson, supra* at 1358 (citations to U.S. Supreme Court precedent omitted). Mumin's right to confrontation was not violated, because he intentionally and knowingly proceeded with a stipulated bench trial on exhibits, with no live testimony, over his objections relating to his motions to suppress. (*See* filing No. 28-23 at CM/ECF pp. 43-54; filing No. 28-27.) Mumin is entitled to no relief on Claim One.

## B.    Claim Two

Mumin claims that he was denied effective assistance of trial counsel because his attorney (1) did not file a motion to dismiss or motion for new trial based on insufficiency of evidence, the prosecutor's failure to produce the lab analyst to testify, the prosecutor's failure to notify defense counsel that the lab analyst's report would be offered at trial, and the prosecutor's failure to demonstrate that non-testifying witnesses were unavailable for trial; (2) did not discover the identity of the confidential informant; (3) failed to object to the habitual criminal enhancement; (4) failed to object based on hearsay and the violation of his right to confront witnesses; (5) failed to move to exclude police

---

waived his right to confrontation by proceeding with a stipulated bench trial. *See U.S. v. Lee*, 374 F.3d 637 (8th Cir. 2004).

officer testimony regarding statements made by non-testifying witnesses; and (6) failed to move to exclude the lab analyst's report.

Subparts (1) and (3) are procedurally defaulted because Mumin did not specifically assign and argue them in his postconviction appeal to the Nebraska Court of Appeals, contrary to a firmly established and regularly followed state practice. (*See* filing No. 28-5 at CM/ECF p. 5.) (citing *State v. Filholm*, 848 N.W.2d 571 (Neb. 2014) (an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court)). Subpart (2) is procedurally defaulted because Mumin did not raise it in his postconviction appeal petition for further review to the Nebraska Supreme Court. (*See* filing No. 28-16.) Mumin cannot raise the issue in a successive postconviction motion. *See Ortiz, supra.*

With regard to subparts (4)-(6), Mumin claims that his trial counsel was ineffective for failing to object on hearsay and confrontation grounds to police officer testimony (adduced at the suppression hearing, the transcripts of which were received at the stipulated bench trial) about what the confidential informant and Mrs. Harris told them and to the lab analyst's report. (Filing No. 1 at CM/ECF p. 17.) Mumin arguably raised subparts (4)-(6) properly throughout the proceedings[3] until his postconviction appeal petition for further review to the Nebraska Supreme Court. (*See* filing No. 28-8 at CM/ECF pp. 5-9; filing No. 28-20 at CM/ECF pp. 8-10; filing No. 28-5 at CM/ECF pp. 12-15; filing No. 28-16 at CM/ECF pp. 7-10.)

---

[3] Mumin did not raise these ineffective assistance of trial counsel claims in his direct appeal petition for further review to the Nebraska Supreme Court, (*See* filing No. 28-11; filing No. 28-12), however the Nebraska Court of Appeals found that the record was insufficient to address any of Mumin's ineffective assistance of trial counsel claims on direct appeal (Filing No. 28-4 at CM/ECF pp. 26-28).

17

Mumin argued in his postconviction appeal petition for further review only that his trial counsel was ineffective for failing to object to the lab analyst's report, not to the police officer testimony. (*See* filing No. 28-16 at CM/ECF pp. 7-10.) Nevertheless, the decision of the Nebraska Court of Appeals effectively disposed of subparts (4)-(6) in Mumin's postconviction appeal. Mumin contended to the court that "without the hearsay testimony and identity of the confidential informant, Harris, and the laboratory technician, the evidence would have been insufficient to support his conviction." (Filing No. 28-5 at CM/ECF p. 14.) The court determined that Mumin did not show any prejudice or deficient performance by his trial counsel. (*Id*.) It found that Mumin's trial counsel "actively sought to suppress the evidence against him," and "it was from that evidence that Mumin was convicted." (*Id*.)

The two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984) governs the merits of an ineffective assistance of counsel claim. *Strickland* requires that a petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id*. at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id*. at 687-88. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Knowles v. Mirzyance*, 556 U.S. 111, 121-123 (2009). In the habeas context, there is doubly deferential standard of review because *Strickland* is a general standard, and habeas review by the very nature of the remedy requires deference to the separate sovereign's decision. *Id*.

Mumin has not shown that the Nebraska Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the court reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Mumin intentionally and knowingly proceeded with a stipulated bench trial with exhibits and no live testimony, giving his trial counsel no reason to object to the evidence adduced at the stipulated bench trial beyond renewing Mumin's motions to suppress. Further, Mumin cannot show "a reasonable probability . . . the result of the proceeding would have been different," because if his trial counsel had objected, then either (1) the State would have called its witnesses at an actual trial and established Mumin's guilt, or (2) the testimony of Mayo, an experienced narcotics investigator, that *he* witnessed Mumin in possession of foil objects containing crack cocaine would have supported Mumin's conviction. (*See* filing No. 28-24 at CM/ECF pp. 72-73, 75-76.) Mumin is entitled to no relief on Claim Two.

## C.    Claim Three

Mumin claims that he was denied effective assistance of appellate counsel because counsel (1) failed to raise the issue of vindictive prosecution, and (2) failed to raise all arguments regarding trial counsel's deficient performance as set forth in Claim Two.

Claim Three is procedurally defaulted. Subpart (1) is procedurally defaulted because Mumin did not specifically assign and argue it in his postconviction appeal. *See Filholm*, *supra*. He also failed to raise it in his postconviction appeal petition for further review to the Nebraska Supreme Court. (*See* filing No. 28-16.) Subpart (2) is procedurally defaulted because Mumin either did not specifically assign and argue the claims in his postconviction appeal to the Nebraska Court of

Appeals, or if he did, he did not raise the claims in his postconviction appeal petition for further review to the Nebraska Supreme Court. He cannot raise the them in a successive postconviction motion. *See Ortiz*, *supra*. Mumin is entitled to no relief on Claim Three.

### D.     Claim Four

Mumin claims that he was denied (1) the right to a fair trial and (2) an impartial judge. Mumin argues that he was denied the right to a fair trial because the trial court admitted inadmissible hearsay evidence in violation of § 27-804 and due process. (Filing No. 1 at CM/ECF pp. 10, 18.)

Subpart (1) is an error of state law claim. As the Supreme Court has long-held, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). In addition, although a habeas petitioner may characterize claims as due process violations, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Carson v. Director of the Iowa Dep't of Corr. Servs.*, 150 F.3d 973, 975 (8th Cir. 1998) (quotation omitted). Accordingly, Subpart (1) is not cognizable in a federal habeas action. Even if the court did not construe subpart (2) as an error of state law claim, it is without merit for the same reason as Claim One: Mumin proceeded with a stipulated bench trial with no live witnesses. Subpart (2) is procedurally defaulted because Mumin could have raised it on direct appeal and did not. *See Hall*, *supra*. Mumin is entitled to no relief on Claim Four.

### E.     Claim Five

Mumin claims that he was subjected to an illegal search and seizure. The Supreme Court has held that Fourth Amendment claims are not cognizable in a

federal habeas action unless petitioner did not receive a full and fair opportunity to litigate the Fourth Amendment claim in the state courts. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Because the record shows that Mumin received a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, Claim Five is not cognizable.

### F.   Claim Six

Mumin claims that he was vindictively prosecuted. Claim Six is procedurally defaulted. Although Mumin raised this claim in his direct appeal to the Nebraska Court of Appeals, he failed to raise it in his petition for further review to the Nebraska Supreme Court. (*See* filing No. 28-11; filing No. 28-12.); *see also, Hall*, *supra*. Mumin is entitled to no relief on Claim Six.

### G.   Claim Seven

Mumin claims that his sentence is void and unconstitutional because the State failed to show that he had counsel or waived counsel for each of his prior convictions. Claim Seven is procedurally defaulted. Mumin failed to raise this claim on direct appeal. *See Hall*, *supra*. Mumin is entitled to no relief on Claim Seven.

### H.   Mumin's Arguments

Mumin repeats many of his arguments from his initial and supplemental habeas petitions in his brief. (Filing No. 41.) In an attempt to excuse his procedurally defaulted ineffective assistance of counsel claims, Mumins directs the court to the United States Supreme Court's decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). (*Id*. at CM/ECF pp. 1-2, 13.) He also mentions the "actual innocence" exception. (*Id*. at CM/ECF p. 6.)

Assuming, without deciding, that *Martinez* applies to federal habeas corpus cases arising from Nebraska convictions, the holding in *Martinez* does nothing to excuse the procedural default of Mumin's claims. In *Martinez*, the Court reasoned that a federal habeas court should "hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default *in an initial-review collateral proceeding* ...." *Martinez,* 132 S.Ct. at 1318 (emphasis added). Here, the default of Mumin's ineffective assistance of trial counsel claims occurred, not on initial review (i.e. in his postconviction motion), but when he failed to properly raise them in his postconviction appeal to the state appellate courts. *See Williams v. Kenney*, 2014 WL 5107145 (D. Neb. 2014). Further, *Martinez* does not apply to ineffective assistance of appellate counsel claims. *See Dansby v. Hobbs*, 766 F.3d 809 (8th Cir. 2014).

Finally, Mumin has not satisfied the requisite elements to excuse his procedurally defaulted claims through any "gateway" claim of actual innocence. To obtain review of an otherwise procedurally barred claim, a petitioner must satisfy a two-part test: (1) the "allegations of constitutional error must be supported with new reliable evidence not available at trial"; and (2) "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Nash v. Russell*, 807 F.3d 892, 898-99 (8th Cir. 2015) (citations omitted). Mumin does nothing more than make legal argument. (*See* filing No. 41 at CM/ECF pp. 6-7.) "The actual innocence exception is concerned with claims of actual, not legal, innocence." *Pitts v. Norris*, 85 F.3d 348, 350 (8th Cir. 1996).

## IV.  MOTION FOR COUNSEL

Mumin has renewed his request for counsel. (Filing No. 45.) "[T]here is neither a constitutional nor statutory right to counsel in habeas proceedings;

instead, [appointment] is committed to the discretion of the trial court." *McCall v. Benson,* 114 F.3d 754, 756 (8th Cir. 1997). As a general rule, counsel will not be appointed unless the case is unusually complex or the petitioner's ability to investigate and articulate the claims is unusually impaired or an evidentiary hearing is required. *See, e.g., Morris v. Dormire*, 217 F.3d 556, 558-59 (8th Cir. 2000), *cert. denied*, 531 U.S. 984 (2000); *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994). See also Rule 8(c) of the *Rules Governing Section 2254 Cases in the United States District Courts* (requiring appointment of counsel if an evidentiary hearing is warranted). Having considered these factors, Mumin's request for counsel is denied.

## V.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on a petition for writ of habeas corpus under § 2254 unless granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Mumin has failed to make a substantial showing of the denial of a constitutional right. The court is not persuaded that the claims raised in Mumin's petitions are debatable among reasonable jurists, that a court could resolve the claims differently, or that the claims deserve further proceedings.  Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THEREFORE ORDERED that:

1.      Mumin's Petition for Writ of Habeas Corpus (Filing No. 1) and Supplemental Writ of Habeas Corpus (Filing No. 14) are dismissed with prejudice.

2.      Mumin's Request for Appointment of Counsel (Filing No. 45) is denied.

3.      Mumin's Motion for Summary Judgment (Filing No. 46) and subsequent requests (Filing No. 49; Filing No. 50) are denied.

4.      The court will not issue a certificate of appealability.

5.      The court will enter a separate judgment in accordance with this Memorandum and Order.

Dated this 24th day of March, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge